IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

◆◆

JENNIFER BINDER LE PAPE and FREDERIC LE PAPE, Individually and
on behalf of Alexandre Le Pape; ALEXANDRE LE PAPE, Individually,

*Plaintiffs-Appellants,*

—v.—

LOWER MERION SCHOOL DISTRICT,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## BRIEF FOR *AMICUS CURIAE* COUNCIL OF PARENT ATTORNEYS AND ADVOCATES IN SUPPORT OF APPELLANTS AND REVERSAL

CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN
   & ZUBA LLP
19 Chestnut Street
Haddonfield, New Jersey 08033
(856) 354-0071

SELENE ALMAZAN-ALTOBELLI
COUNCIL OF PARENT ATTORNEYS
   AND ADVOCATES
P.O. Box 6767
Towson, Maryland 21285
(844) 426-7224

*Attorneys for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 the following disclosure is made on behalf of these entities:

Council of Parent Attorneys and Advocates

1. No Amicus is a publicly held corporation or other publicly held entity;
2. No Amicus has parent corporations; and
3. No Amicus does not have 10% or more of stock owned by a corporation.

Respectfully submitted,


*/s/Selene Almazan-Altobelli*
SELENE ALMAZAN-ALTOBELLI
*Counsel of Record*
COUNCIL OF PARENT ATTORNEYS AND
ADVOCATES
P.O. BOX 6767
TOWSON, MD 21285
844.426.7224
SELENE@COPAA.ORG


Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ..........................................................................i

TABLE OF CONTENTS................................................................... ii

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF INTEREST OF *AMICUS CURIAE*..............................1

SUMMARY OF ARGUMENT ............................................................4

ARGUMENT ...................................................................................6

   **I.**   THE ADA PROVIDES ROBUST ANTI-DISCRIMINATION REMEDIES THAT ARE DISTINCT FROM IDEA'S FAPE REQUIREMENT..........................................................................6

   **II.**   CONGRESS HAS PROVIDED INDIVIDUALS WITH DISABILITIES WITH AN INDEPENDENT RIGHT TO EQUAL ACCESS UNDER ADA AND SECTION 504 EVEN WHEN THE ADA AND IDEA CLAIMS BOTH ADDRESS A STUDENT'S EDUCATION...................12

   **III.**   THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BECAUSE ITS DECISION CONFLICTS WITH THE PLAIN STATUTORY LANGUAGE OF SECTION 1415(*l*) ................................15

CONCLUSION ...............................................................................19

CERTIFICATE OF COMPLIANCE....................................................20

CERTIFICATE OF SERVICE ...........................................................20

VIRUS CERTIFICATION AND IDENTICAL COMPLIANCE OF BRIEF ........20

CERTIFICATES OF BAR MEMBERSHIP ...........................................21

# TABLE OF AUTHORITIES

**Cases**

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) ...............2

*Bd. of Educ. v. Tom F.*, 552 U.S. 1 (2007) ...............................................................2

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176 (1982) ..................................................................................................................6, 9, 10

*Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275 (11th Cir. 2008) ......................7

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ................2, 6, 7

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ..............................................2

*Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017) .......................................*passim*

*Hamer v. Neighborhood Housing Servs.*, 138 S. Ct. 13 (2017) ....................... 15-16

*Health & Hosp. Corp. v. Talevski*, No. 21-806, 2023 U.S. LEXIS 2421 (June 8, 2023) ......................................................................................................................16

*K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F. 4th 779 (4th Cir. 2022) ..................18

*K.M. v. Tustin*,  725 F.3d 1088 (9th Cir. 2013)  .................................................9, 10

*K.M. v. Tustin*, *No. 10-1011*, 2011 WL 2633673 (C.D. Cal. July 5, 2011), *rev'd in pertinent part,* 725 F.3d 1088 (9th Cir. 2013) .............................................10

*Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) .........................................11

*Perez v. Sturgis Pub. Schs.*, 143 S. Ct. 859 (2023) ........................................*passim*

*Perez v. Sturgis Pub. Schs.*, 3 F.4th 236 (6th Cir. 2021), *rev'd on other grounds*, 143 S. Ct.  859 (2023) ......................................................................................14

*Schaffer v. Weast*, 546 U.S. 49 (2005) ....................................................................2

*Simmons v. Himmelreich*, 578 U.S. 621 (2017) ...................................... 15-16

*Smith v. Robinson*, 468 U.S. 992 (1984) ...............................................................12

*Tennessee v. Lane*, 541 U.S. 509 (2004)  ..............................................................11

*United States v. Florida*, 938 F.3d 1221 (11th Cir. 2019), *reh'g en banc denied*, 21 F.4th 740 (11th Cir. 2021) .................................................................................11

*United States v. Georgia*, 546 U.S. 151 (2006) .......................................................11

*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) ........................................2

**Statutes**

The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. (ADA) ...................................................................................................................*passim*

The Civil Rights Act of 1871, ch. 22, 17 Stat. 13, codified as amended at 42 U.S.C. §1983 ...............................................................................................2, 12, 16

The Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, 100 Stat. 796 (HCPA), now codified in IDEA at 20 U.S.C. § 1415(*l*) .......................12

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* ...............................................................................................................................1

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ...................*passim*

20 U.S.C. § 1401(3)(A)(i) .............................................................................................7

20 U.S.C. § 1401(3)(A)(ii) ........................................................................................ 7-8

20 U.S.C. § 1415(*l*) .............................................................................................*passim*

42 U.S.C. § 12101(b)(4) .............................................................................................11

42 U.S.C. § 12102 (1)(A) .............................................................................................8

42 U.S.C. § 12102(2)(A) ...............................................................................................8

42 U.S.C. § 12102(1)(B) ...............................................................................................8

42 U.S.C. § 12102(1)(C) ...............................................................................................8

42 U.S.C. § 12134 ..................................................................................................... 8-9

**Rules**

Fed. R. App. P. 29(a)(4)(E) ...........................................................................................1

Fed. R. App. P. 32(a)(7)(C) .........................................................................................19

**Regulations**

28 C.F.R. § 35.160(a)(1) ...................................................................................9

28 C.F.R. § 35.160(b)(2) .................................................................................18

**Other Authorities**

U.S. Department of Education, Office of Civil Rights Data Collection, 2017-18
State and National Estimations, Student Enrollment, SCH 005 Total ............8

# STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Council of Parent Attorneys and Advocates (COPAA) is a not-for-profit organization for parents of children with disabilities, their attorneys and advocates. COPAA believes effective educational programs for children with disabilities can only be developed and implemented with collaboration between parents and educators as equal parties. COPAA does not represent children but provides resources, training, and information for parents, advocates, and attorneys to assist in obtaining the free appropriate public education (FAPE) such children are entitled to under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*[2] Our attorney members represent children in civil rights matters. COPAA also supports individuals with disabilities, their parents, and advocates, in attempts to safeguard the civil rights guaranteed to those individuals under federal laws,

---

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, *Amicus* states that: (i) there is no party or counsel for a party in the pending appeal who authored the *Amicus Curiae* brief in whole or in part; (ii) there is no party or counsel for a party in the pending appeal who contributed money that was intended to fund preparing or submitting the brief; and (iii) no person or entity contributed money that was intended to fund preparing or submitting the brief, other than *Amicus* and its members.

[2] The statute was originally named the Education of the Handicapped Act or EHA; it was renamed IDEA in 1990. *See Fry v. Napoleon Cmty. Schs.,* 580 U.S. 154, 160 n.1 (2017). For the sake of simplicity, we refer only to IDEA in this brief. *Id.*

including the Civil Rights Act of 1871, ch. 22, 17 Stat. 13 (codified as amended at 42 U.S.C. §1983), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504) and Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA).

COPAA brings to the Court the unique perspective of parents and advocates for children with disabilities. COPAA has often filed as *amicus curiae* in the United States Supreme Court, including *Perez v. Sturgis Public Schools,* 143 S. Ct. 859 (2023); *Endrew F. v. Douglas County School District. RE-1*, 580 U.S. 386 (2017); *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017); and *Forest Grove School District v. T.A.*, 557 U.S. 230 (2009); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Bd. of Educ. v. Tom F.*, 552 U.S. 1 (2007); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006); and *Schaffer v. Weast*, 546 U.S. 49 (2005); and in numerous cases in the United States Courts of Appeal.

Many of these children experience significant challenges. Their success depends not only on the right to secure the IDEA's guarantee of a FAPE, but also upon the right to be free of unlawful discrimination in violation of the ADA, whether or not they receive special education. *Amicus* COPAA's interest in this case stems from its commitment to ensuring that students with disabilities are protected from unlawful discrimination and have access to protection from discrimination under the

2

ADA, independent of their rights under IDEA to special education and related services.

Amicus has moved for permission to file this brief. Counsel for Appellants has consented to this brief, and counsel for Appellee declined to consent. *Amicus* is therefore filing this Brief with an accompanying Motion for Leave to File *Amicus Curiae*.

*Amicus* adopts the Statement of the Case  contained in Appellant's Brief at 2-19.

# SUMMARY OF ARGUMENT

For students with disabilities, an umbrella of protections rooted in the Constitution exist that protect their access to education and its benefits as well as their Fourteenth Amendment right to be free from discrimination on the basis of their disabilities. IDEA was enacted pursuant to Congress's power under the Spending Clause and "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' – more concisely known as FAPE- to all children with certain physical or intellectual disabilities." *Fry*, 580 U.S. at 158. Thus, IDEA provides a "substantive right" to special education and related services. *Id.* Congress has also acted to protect students with disabilities from discrimination by enacting separate and distinct statutes, notably Section 504 and Title II of the ADA, that bar public schools from discriminating against students on account of their disabilities, regardless of whether such discrimination deprives the students of FAPE. These statutes provide valid, standalone legal claims to be protected from unlawful discrimination.

The District Court in this case erred in holding that, whenever the ADA claim shares some portion of the gravamen of an IDEA claim, there is no standalone claim for violation of the ADA. The District Court mixed up two

4

different legal concepts, the first being when exhaustion of an IDEA claim is required as a prerequisite for bringing an ADA/Section 504 claim under 20 U.S.C. § 1415(*l*), and the second being whether an ADA claim is a standalone legal claim.

As the Supreme Court has recognized, IDEA and ADA are fundamentally different statutes: "the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Fry*, 580 U.S. at 170-71. Nonetheless, there may be "some overlap in coverage: The same conduct might violate all three statutes," with the result that "a plaintiff might seek relief for the denial of a FAPE under Title II and §504 as well as the IDEA." *Id.* at 171. Thus, when a student asserts that the denial of non-discriminatory access to public education has deprived the student of an adequate education, the ADA and IDEA may overlap and § 1415(*l*) may require that the student first pursue a due process hearing under IDEA for claims for prospective relief and any other relief also available under IDEA. Yet, the ADA claim for non-discriminatory access to public education remains a distinct legal claim with distinct legal elements, with the result that a student who loses an IDEA claim may nonetheless prevail on the ADA claim.

Thus, students with disabilities have standalone claims under Section 504 and the ADA to be free from unlawful disability discrimination, regardless of whether the discrimination deprives them of FAPE under IDEA. The district court erred in holding that the plaintiffs did not have a standalone ADA claim. For that reason, this Court should reverse the district court.

## ARGUMENT

### I. THE ADA PROVIDES ROBUST ANTI-DISCRIMINATION REMEDIES THAT ARE DISTINCT FROM IDEA'S FAPE REQUIREMENT

IDEA and ADA/Section 504 are fundamentally different statutes. IDEA "establishes a substantive right to a 'free appropriate public education' for certain children with disabilities." *Endrew F.*, 580 U.S. at 390. The statute "represents an ambitious federal effort to promote the education of [disabled] children and was passed in response to Congress' perception that a majority of [disabled students] in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out.'" *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 179 (1982) (quoting H.R. Rep. No. 94-332, p.2 (1975)). IDEA provides detailed requirements for the development of an appropriate Individualized Education Program (IEP) for every student and powerful procedural protections when school

6

districts fail to follow statutory and regulatory directives. *See Endrew F.*, 580 U.S. at 391. IDEA provides for compensatory education as a remedy, *see Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275 (11th Cir. 2008), but not a claim for compensatory damages. *See Perez*, 143 S. Ct. at 865.

In contrast, the ADA and Section 504 "aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs." *Fry*, 580 U.S. at 170. In 1990, Congress passed the Americans with Disabilities Act, a landmark law protecting the rights of individuals with disabilities. Title II barred discrimination by public entities, including school districts. Title II goes beyond Section 504 in applying to state and local government agencies even if they have not received any federal funds. Because public schools receive federal funds and are public entities, public schools are subject to the requirements of both Title II of the ADA and Section 504, in addition to IDEA. *See Fry*, 580 U.S. at 159.

The ADA's scope is much broader than IDEA's. IDEA protects only those students who both have a disability listed in the statute, 20 U.S.C. § 1401(3)(A)(i), and also "by reason thereof, need[] special education and related services." 20

U.S.C. § 1401(3)(A)(ii). By contrast, the ADA applies to any individual who has "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102 (1)(A).[3]

Because learning is a major life activity under the ADA, 42 U.S.C. § 12102(2)(A), students who are eligible for special education and related services under IDEA typically meet the definition of disability under ADA.  But while students with IEPs under IDEA are covered by ADA, the ADA also covers many students who do not need special education under IDEA.  Some of these students may choose to have Section 504 plans; in the 2017-2018 school year, there were 6,728,064 students served under IDEA and 1,380,146 who were on Section 504 plans without an IEP.[4]

The ADA also provides some very detailed protections not found in IDEA. In fact, the ADA includes a mandate to eliminate discrimination against individuals with disabilities, and it required the United States Department of

---

[3] The statute also applies to individuals who have "a record of such an impairment" or are "regarded as having such an impairment.  42 U.S.C. § 12102(1)(B) & (C).

[4] U.S. Department of Education, Office of Civil Rights Data Collection, 2017-18 State and National Estimations, Student Enrollment, SCH 005 Total, https://ocrdata.ed.gov/estimations/2017-2018.

Justice (DOJ) to promulgate regulations to implement the ADA to that end. 42

U.S.C. § 12134. Thus, while IDEA may set the "basic floor of opportunity," the

ADA may require more, as it mandates equal access for students with disabilities.

For example, the ADA regulations specifically require public entities to "take

appropriate steps to ensure that communications with applicants, participants,

members of the public and companions with disabilities are as effective as

communications with others." 28 C.F.R. § 35.160(a)(1).

*K.M. v. Tustin*, 725 F.3d 1088 (9th Cir. 2013) illustrates the ADA's

imposition of a higher obligation than IDEA. In that case, a student who was deaf

sought Communication Access Real-time Translation services (CART)—an

accommodation that provides word-for-word transcription—to enable her to follow

classroom instruction. The school district in *K.M.* refused to provide her with

CART and instead offered her different supports which did not provide her with

the type of word-for-word transcription she felt she needed to have equal access to

instruction.

To support its position that CART was not required, the school district relied

on the Supreme Court's decision in *Rowley*. In that case, the Supreme Court held

that a deaf student who was achieving "'better than the average child in her class

and… advancing easily from grade to grade'" received a FAPE even though "'she understands considerably less of what goes on in class than she could if she were not deaf.'" 458 U.S. at 210, 185. Under the *Rowley* analysis applicable to the student's IDEA claim, the district court found that the school district's failure to provide the CART services did not deny K.M. a FAPE. *See K.M. v. Tustin*, No. 10-1011, 2011 WL 2633673, at *12 (C.D. Cal. July 5, 2011), *rev'd in pertinent part,* 725 F.3d 1088 (9th Cir. 2013).

However, the court of appeals reversed, holding that "the IDEA FAPE requirement and the Title II communication standards are significantly different," with "[t]he result… that in some situations, but not others, schools may be required under the ADA to provide services to deaf or hard-of-hearing students that are different than the services required by the IDEA." 725 F.3d at 1100. The ADA regulations require that communication be made equally accessible to people with communication disabilities, even if the student does not require equal access to receive a FAPE as defined by *Rowley*. *See, e.g., K.M.*, 725 F.3d at 1098.

In *K.M.*, the Ninth Circuit recognized that IDEA sets the "floor of access to education," while Title II and its implementing regulations "require public entities to take steps towards making existing services not just accessible, but *equally*

10

accessible to people with communication disabilities." *Id.* at 1097. The court did "not find in either statute an indication that Congress intended the statutes to interact in a mechanical fashion in the school context, automatically pretermitting any Title II claim where a school's IDEA obligation is satisfied." *Id.* at 1092.

Thus, while IDEA may set the "basic floor of opportunity" in schools, the ADA may require more as it was enacted "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities" and it "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4). Thus, the ADA arises under the Fourteenth Amendment. *Tennessee v. Lane*, 541 U.S. 509 (2004); *see also United States v. Florida*, 938 F.3d 1221, 1247 (11th Cir. 2019), *reh'g en banc denied*, 21 F.4th 730 (11th Cir. 2021). Congress may proscribe a broad range of conduct under the Fourteenth Amendment, *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 732 (1982), including damage claims for relief under the ADA. *United States v. Georgia*, 546 U.S. 151 (2006). Further, the ADA provides individuals with the ability to pursue

damages to make victims of discrimination whole, and also to disincentivize

discrimination at an institutional level.

**II.** **CONGRESS HAS PROVIDED INDIVIDUALS WITH DISABILITIES WITH AN INDEPENDENT RIGHT TO EQUAL ACCESS UNDER ADA AND SECTION 504 EVEN WHEN THE ADA AND IDEA CLAIMS BOTH ADDRESS A STUDENT'S EDUCATION**

The Supreme Court has addressed the relationship between IDEA and

federal non-discrimination laws in three cases.  In the first case, *Smith v. Robinson*,

468 U.S. 992, 1009 (1984), the Court held that Congress intended that IDEA "be

the exclusive avenue through which a plaintiff may assert an equal protection

claim to a publicly financed special education."  Therefore, the Court held that

claims under Section 504 and Section 1983 were simply not available to students

asserting a right to a free appropriate public education under IDEA.  *Id*. at 1013,

1021.

But Congress disagreed.  As the Supreme Court observed in *Fry*, "Congress

was quick to respond" by "overturn[ing] *Smith*'s preclusion of non-IDEA claims

while also adding a carefully defined exhaustion requirement." *Fry*, 580 U.S. at

161. Congress enacted the Handicapped Children's Protection Act of 1986, P.L.

99-372, 100 Stat. 796, amending Section 615 of IDEA to establish rights to

attorney fees and an exhaustion provision (now at 20 U.S.C. § 1415(*l*)) for claims

under other federal laws protecting children with disabilities. HCPA's exhaustion

requirement, as amended, reads in full:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*) (alterations in original).

The Court noted that § 1415(*l*)'s first clause "'reaffirm[s] the viability' of

federal statutes like the ADA or Rehabilitation Act 'as separate vehicles,' no less

integral than the IDEA, 'for ensuring the rights of [disabled] children.'" 580 U.S.

at 161 (quoting H.R. Rep. 99-296, p. 4 (1985)). The Court then noted that the

second clause simply imposed a limit that, when the plaintiff is seeking "relief that

is also available under" the IDEA, the plaintiff must "first exhaust the IDEA's

administrative procedures." *Id*. That exhaustion requirement does not transmute

the ADA claim into an IDEA claim; the ADA claim remains a separate vehicle for

enforcing a different right, the right to be free of unlawful discrimination.

13

Recently, the Supreme Court again considered the relationship between ADA and IDEA in *Perez*. In that case, the Sixth Circuit had held that the gravamen of the student's claim was a denial of FAPE, the school's failure "to provide him with the educational services he needed" and affirmed dismissal of the ADA claim. *Perez v. Sturgis Pub. Schs.*, 3 F.4th 236, 241 (6th Cir. 2021), *rev'd on other grounds*, 143 S. Ct. 859 (2023). That holding was not appealed. Nonetheless, the Court reversed, holding that the exhaustion requirement did not apply because the plaintiffs sought only compensatory damages. The Court said that Section 1415(*l*) "applies *only* to suits that 'see[k] relief . . . also available under' IDEA." *Perez,* 143 S. Ct. at 864 (2023) (emphasis in original). "And that condition simply is not met in situations like ours, where a plaintiff brings a suit under another federal law for compensatory damages – a form of relief everyone agrees IDEA does not provide." *Id*. The district court below did not have the benefit of the Supreme Court's decision in *Perez*.

Thus, the Court's decisions in both *Fry* and *Perez* make clear that, even if the ADA/504 and IDEA claims may overlap in that the gravamen of the complaint is the education for both claims, the ADA/504 claims seek to protect independent legal entitlements, the right to be free of unlawful discrimination and to have equal access.

**III.** **THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BECAUSE ITS DECISION CONFLICTS WITH THE PLAIN STATUTORY LANGUAGE OF SECTION 1415(*l*)**

Two Supreme Court cases from this term, one involving Section 1415(*l*) itself, emphasize the importance of construing statutes consistently with the actual statutory language. *Perez, supra*, notes that the first "salient feature" of "Section 1415(*l*) contains two salient features. First the statute sets forth this general rule: 'Nothing in [IDEA] shall be construed to restrict' the ability of individuals to seek 'remedies' under the ADA or 'other Federal laws protecting the rights of children with disabilities.'" 143 S. Ct. at 863. Second, when seeking relief available under IDEA – that is, equitable relief – a student must exhaust administrative remedies. *Id.* at 863-64.

In determining whether 1415(*l*) did not require exhaustion of a compensatory damages claim, even if the claim was premised on a denial of FAPE, the Court noted, "it is . . . our job to apply faithfully the law Congress has written, and we cannot replace the actual text with speculation as to Congress' intent." 143 S. Ct. at 865 (cleaned up). Hewing strictly to the statutory text, the Court had to determine that exhaustion was not required because compensatory damages are not equitable relief. This is consistent with ample precedent holding that the Court presumes that a statute "means what it says." *See, e.g., Hamer v. Neighborhood*

15

*Housing Servs.*, 138 S. Ct. 13, 20 (2017); *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2017).

In *Health & Hosp. Corp. v. Talevski*, No. 21-806, 2023 U.S. LEXIS 2421 (June 8, 2023) (*HHC*), the Court again relied upon strict construction of statutory language when it held that rights arising under the Federal Nursing Home Reform Act (FNHRA) were enforceable under 42 U.S.C. § 1983. The petitioner, a nursing home, argued "that 'Spending Clause statutes do not give rise to privately enforceable rights under Section 1983' because contracts were not 'generally' enforceable by third-party beneficiaries at common law." *Id.* at *17 (citing petitioner's brief). But Section 1983 provides an express cause of action for any person deprived of any rights "secured by the Constitution and *laws*." The Court reasoned that "laws means laws," so an individual may[5] have a right enforceable under Section 1983 under any federal law, including a Spending Clause statute. *Id.* at *9. The Court refused to ignore the plain language of the statute.

---

[5] Not all federal laws create rights enforceable under Section 1983 and the second part of *HHC* discusses the conditions under which a federal law creates a right that can be enforced under Section 1983. The first part of the opinion, relevant here, focuses on, and rejects, the argument that a Spending Clause statute can never create a right that one could enforce under Section 1983.

In the decision below, the district court simply did not adhere to the statutory language in Section 1415(*l*). The statute specifically says that IDEA cannot *"be construed to restrict or limit the rights, procedures, and remedies available under"* the ADA and Section 504, among other federal laws. The district court turned Section 1415(*l*) on its head when it ruled that because IDEA gave Alex the right to pursue equitable relief for a denial of FAPE, IDEA also precluded him from pursuing damages claims for violations of ADA/Section 504 <u>and</u> deprived him of his constitutional right to a jury trial on those damages claims. *Summ. Judg. Op.* at 17-18. The district court's decision does the opposite of what Section 1415(*l*) requires; it imposes severe restrictions and limitations on rights, procedures, and remedies available to Alex under laws other than IDEA.

Because the legal standard for providing effective communication is more demanding under the ADA and Section 504 than under IDEA, as the ADA and Section 504 require equal access, a student may well have a winning ADA/504 claim for effective communication while losing an IDEA claim. This is because a student may be able to make adequate educational progress sufficient for a FAPE under IDEA but still be denied equal access to his education.

IDEA's exhaustion provision, 20 U.S.C. § 1415(*l*), is a procedural rule that sets forth the sequence for bringing non-IDEA claims that share the gravamen of FAPE with IDEA claims. *See K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F. 4th 779, 791 (4th Cir. 2022) (holding provision is a claims-processing rule). That provision does not address the legal merits of the claim, does not limit the ADA or other non-IDEA claim on the merits to IDEA's legal standards, and certainly does not obliterate the Seventh Amendment jury trial rights of students with disabilities.

There is no factual dispute that the letter board is Alex's preferred method of communication. *See* 28 C.F.R. § 35.160(b)(2) ("[i]n determining what types of auxiliary aids and services are necessary [for effective communication], a public entity shall give primary consideration to the requests of individuals with disabilities"). Further, the district court's opinion establishes that there are genuine issues of material fact as to whether the letter board is an effective means of communication for Alex. The court noted that Alex adduced evidence supporting the use of the letter board from a neurologist, psychologist, and headache medicine physician, speech and language pathologist, psychiatrist, neuropsychologist, autism researcher, developmental and behavioral pediatrician, family practice physician, and a Board Certified Behavior Analyst. *Summ. Judg. Op.* at 2 n.3. This evidence

creates a genuine issue of material fact as to whether the District violated the effective communication mandates in the ADA and Section 504. It was error to deprive Alex of his right to have a jury determine the facts just because he also had rights under IDEA.

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

_/s/Catherine Merino Reisman_
CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN & ZUBA LLP
19 CHESTNUT STREET
HADDONFIELD, NJ 08033
856.354.0071
CATHERINE@RCGLAWOFFICES.COM

_/s/Selene Almazan-Altobelli_
SELENE ALMAZAN-ALTOBELLI
_Counsel of Record_
COUNCIL OF PARENT ATTORNEYS AND ADVOCATES
P.O. BOX 6767
TOWSON, MD 21285
844.426.7224
SELENE@COPAA.ORG

**CERTIFICATION OF COMPLIANCE PURSUANT TO**
**FED. R. APP. 32(a)(7)(C)**

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Third Circuit Rule 32-1, the attached *amicus* brief is proportionately spaced, has a typeface of 14 points, as measured by Word 2010, and contains 3,913 words.

Dated:  June 23, 2023

> */s/Selene Almazan-Altobelli*
> Selene Almazan-Altobelli
> Attorney for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that on June 23, 2023 the foregoing document was served on all parties or their counsel of record through the CM/ECF .

> */s/Selene Almazan-Altobelli*
> Selene Almazan-Altobelli
> Attorney for *Amicus Curiae*

**VIRUS CERTIFICATION & IDENTICAL COMPLIANCE OF BRIEF**

I, Selene Almazan-Altobelli, hereby certify that:

The electronic version of this brief is identical to the text version in the paper copies filed with the court. This document was scanned using

Microsoft Defender AntiVirus (with updated virus definition file as of June 23, 2023) and no viruses were detected.

Dated: June 23, 2023

*/s/Selene Almazan-Altobelli*
Selene Almazan-Altobelli
Attorney for *Amicus Curiae*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

Dated: June 23, 2023

*/s/Selene Almazan-Altobelli*
SELENE ALMAZAN-ALTOBELLI

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES
P.O. BOX 6767
TOWSON, MD 21285
844.426.7224
SELENE@COPAA.ORG

# CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

Dated: June 23, 2023

*/s/Catherine Merino Reisman*
CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN & ZUBA LLP
19 CHESTNUT STREET
HADDONFIELD, NJ 08033
856.354.0071
CATHERINE@RCGLAWOFFICES.COM